## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

KIM MILLBROOK,     :  CIVIL ACTION NO. 3:13-cv-2000
           :
    Plaintiff    :  (Judge Nealon)
           :
  v.         :
           :
           :
WARDEN BLEDSOE, ET AL.,   :
           :
    Defendants  :

### MEMORANDUM

### Background

On July 25, 2013, Plaintiff, Kim Millbrook, an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated this civil rights action pursuant to 28 U.S.C. § 1331.  (Doc. 1).  Named as Defendants are the following sixteen (16) USP-Lewisburg officials: ex-Warden B. A. Bledsoe; Warden J. E. Thomas; Associate Warden D. Wilson; Counselors M. Edinger and R. Bingaman; Lieutenants Jason Seeba, D. Dowkus, D. Knapp, P. Carrasquillo, R. Johnson; T. Johnson and Scott; EMTs/Paramedics L. Potter, Matthew Barth, and Gregory George; and Case Manager C. Hendrickson.  (Id.). Plaintiff asserts that his claims are based on events which occurred between April 12, 2012 and April 13, 2013 while he was housed in the USP-Lewisburg Special

Management Unit (SMU).[1]  See  Doc. 1, ¶ V.

    According to the Complaint, Plaintiff was transferred from F-Block to G-Block on April 12, 2012.  See Doc. 1, ¶ 1.  He asserts that Lieutenant Seeba initiated his transfer to an SMU unit which housed sexual predators as retaliation for his filing of lawsuits and grievances.[2]  Id. at ¶ 6.  Millbrook  contends that the transfer was also improper because he had previously been physically and sexually abused by both staff and other prisoners.  Id. at ¶ 12.

    Upon his arrival, Plaintiff was purportedly placed in a cell with inmate Derrick Brown who immediately threatened to kill the Plaintiff in the presence of Seeba.  Although Inmate Brown made multiple sexual advances towards him, Plaintiff's subsequent requests for a cell transfer were denied by Defendants Seeba and Warden Bledsoe.  Plaintiff and Brown were eventually moved from G-Block to a D-Block cell.  On July 12, 2012, Millbrook claims that he was allegedly assaulted by Inmate Brown.   It is asserted that although the attack was

---

[1] In a prior action filed with this Court, Millbrook v. United States of America, et al., Civil No. 3:CV-12-421, Plaintiff describes himself as having post traumatic stress and bipolar disorder who was allegedly subjected to prior assaults by both staff and other prisoners at both USP-Lewisburg and his prior place of confinement .  See id., Doc. 1, Section V, ¶ 29.

[2]  During the actual transfer Plaintiff state that he was subjected to verbal threats and harassment by non-defendant correctional staff members.

witnessed by Lieutenant Johnson and Counselor Edinger, the prisoners were allowed to remain in the same cell.  See id. at ¶ 17.

The Complaint next generally contends that Defendant Edinger denied Plaintiff opportunity to file administrative grievances as retaliation for previously filing lawsuits against said Defendant.  See id. at ¶ 20.  On or about October 16, 2012, Plaintiff states that he was moved from F-Block back to G-block per a directive from Lieutenant Seeba and a non-defendant correctional officer.  Upon his return to G-block, Plaintiff states that he was celled with Inmate Holmes.  On that same date, Seeba allegedly sprayed Plaintiff and Holmes with a chemical agent without having just cause to initiate such action.  See id. at ¶ 26.  In addition, the two (2) prisoners were denied adequate decontamination and medical treatment after the incident.  It is alleged that Holmes later told Plaintiff that Seeba had wanted Holmes to beat up Millbrook for being a jailhouse snitch.

Plaintiff was subsequently moved back to F block where he was issued a meritless misconduct charge.  On October 16, 2012, Millbrook's legal papers were purportedly thrown away by a correctional officer because they were contaminated by the chemical agent.  See id. at ¶ 29.  It is next alleged that between November-December 2012, Warden Thomas failed to protect Plaintiff's

3

safety by not acting on the inmate's requests for a transfer or placement in protective custody.  Millbrook adds that Thomas also refused to take action when Plaintiff complained that he was being denied access to the grievance process. See id. at ¶ 32.

On March 28, 2013, Lieutenant Johnson tried to force the Plaintiff into accepting a cellmate.  When Plaintiff refused, Lieutenants Johnson and Scott had him placed into ambulatory restraints by a use of force team which was accompanied by EMT Barth.  The Complaint asserts that although the restraints were applied too tightly, Barth approved of their placement.  Plaintiff was than moved to a G block cell which he describes as being excessively hot, bug infested, and poorly ventilated.  See id. at ¶ ¶39, 46.

After being in that cell, and while still in ambulatory restraints, Plaintiff was visited by Lieutenants Johnson and Knapp who allegedly denied his request for medical treatment and loosening of the restraints telling him only that he would remain in restraints in the G Block cell until he agreed to accept a cell mate.  Millbrook adds that he was also visited by Associate Warden Wilson that same day who likewise denied his requests for relief.

Later that evening, EMT George  and Lieutenant Carrasquillo revived the

4

Plaintiff after he had passed out.  George allegedly stated that he should have let the inmate die because of filing all those lawsuits.  Thereafter, that same night, Millbrook asserts that he was seen by EMT Potter and Lieutenant Dowkus who also refused to loosen his restraints.  See id. at ¶ 48.  During the morning of March 29, 2013, the Complaint contends that Lieutenant Knapp told Millbrook he could either accept a violent prisoner with a history of mental and sexual issues, Inmate Black, as his cellmate or remain in restraints.  Millbrook agreed to accept the cell mate.  Black and Millbrook remained cell mates on G Block for approximately one (1) month.  During that same day, Counselor Bingaman allegedly denied Plaintiff's request for a cell transfer as well as his request for grievance forms.  The Complaint further maintains that unconstitutional conditions of confinement existed on G Block. It is alleged that those cells lack emergency alarm buttons, have poor illumination, and inmates are not provided with cleaning supplies.  See id. at ¶ 55.

The final claim raised in the Complaint maintains that the Plaintiff was purportedly attacked by Inmate Black on April 13, 2013.  Associate Warden Wilson and Case Manager Hendrickson allegedly failed to take any action when informed of the incident.  The Complaint seeks injunctive and declaratory relief as

well as compensatory and punitive damages.

Defendants have responded to the Complaint by submitting a motion to dismiss and for summary judgment.  <u>See</u> Doc. 19.  A review of the docket shows that Plaintiff has neither responded to the Defendants' motion nor sought an enlargement of time in which to do so.  Accordingly, Defendants' motion will be deemed unopposed and will be granted.

## **Standard of Review**

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings.  Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Defendants' motion.  Thus, their motion will be treated as solely seeking summary judgment.  <u>See</u> <u>Latham v. United States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for

summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Discussion**

    1.      **Administrative Exhaustion**

    Defendants initially argue that Millbrook failed to exhaust his available administrative remedies regarding any claim raised in the Complaint despite having had the opportunity to do so.  See Doc. 35, p. 19.  They assert that because

Plaintiff did not initiate any administrative grievances after January 13, 2011, his pending claims which are based on events which transpired during 2012 through 2013 are clearly subject to dismissal on the basis of non-exhaustion.  As noted above, this argument is unopposed.

The Complaint indicates that Plaintiff should be excused from the exhaustion requirement because his administrative remedies were made unavailable.  See Doc. 1, ¶ IV.  Millbrook generally adds that Counselor Edinger denied him "access to file any administrative remedies" out of retaliation for filing prior lawsuits.  See id. at Section V, ¶ ¶ 20, 55.  Plaintiff also vaguely contends that he told Warden Thomas that Counselor Aderhoff, Case Manager Nicholas, and Unit Manager Knox were not making the administrative process available to me.  See id. at ¶ 32.  In addition, Bingaman allegedly made the administrative process unavailable by telling Plaintiff that he was not going to start filing complaints against G Block employees.  See id. at ¶ 56.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

9

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75. The Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See, Jones, 549 U.S. at 216;  see also Ray v. Kertes, 285

F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  Rather, pursuant to the standards announced in <u>Williams v. Runyon</u>, 130 F.3d  568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[3]

The BOP has a well established  three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment.  <u>See</u> 28 C.F.R. §§ 542.10-542.19.  After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting  "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20)  calendar days "following the date on which the basis for the Request occurred."  <u>See</u>  28 C.F.R. § 542.14(a).  The Warden has twenty (20)  calendar days from the date the Request or Appeal is filed in which to respond."  <u>See</u>  28 C.F.R. § 542.18.  If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response.  <u>See</u> 28 C.F.R. § 542.15.  Finally, if the inmate is

_____

[3] In <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

12

dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response.  Id.  Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  Id.

In support of the non-exhaustion argument, Defendants have submitted a declaration under penalty of perjury submitted by non-Defendant USP-Lewisburg Attorney Advisor Michael Romano.  See Doc. 34-1, Exhibit A.  Romano states that based on a review of the BOP's computerized records although Millbrook filed 101 grievances following his March 10, 2010 arrival at USP-Lewisburg, the last grievance the inmate filed at the institutional level was received on January 13, 2011.  See id. at ¶ 7.

A declaration under penalty of perjury  submitted by Counselor M. Edinger adds that while at USP-Lewisburg Plaintiff was assigned to at least six different housing units.  See Doc. 34-3, Exhibit B.  More importantly, between May 27, 2012 and September 12, 2012 Edinger states that he acted as Plaintiff's counselor and as such was responsible for the distribution and tracking of any grievances by

Millbrook.  Edinger avers that Plaintiff "did not ask me for administrative
remedies while he was assigned to my case load.  Id. at ¶ 8.  The Defendant adds
that Plaintiff would have been provided with grievance forms "had he requested
them."  Id.

Also submitted is a declaration under penalty of perjury by Counselor
Bingaman who states that Millbrook was assigned to his case load between March
29, 2013 to September 20, 2013.  See id. at Exhibit C, ¶ 3.  Bingaman adds that
during said period Plaintiff "did not ask me for administrative remedies while he
was assigned to my caseload" and he would have been provided with such forms
had he requested them.  Id. at ¶ 4.

Defendants have also provided a declaration under penalty of perjury by
USP-Lewisburg Unit Manager D. Knox, a non-defendant.  See id. at Exhibit D.
Knox states that he served as Millbrook's unit manager from October 18, 2011 to
April 12, 2012; May 25, 2012 through March 28, 2013; and January 7, 2014
through February 12, 2014.  Unit Manager Knox adds that although he was
regularly available on a weekly basis to Plaintiff during those periods and had
spoken to Millbrook several times through those time frames the prisoner "has
never mentioned an alleged denial of access to the administrative remedy system

14

to him." Id. at ¶ 7.

A declaration by non-defendant Unit Manager S. Stover provides that he served as Plaintiff's unit manager between March 28, 2013 through September 13, 2013 and from January 2, 2014 through January 7, 2014.  Unit Manager Stover similarly avers that during their multiple conversations within those time periods Millbrook never complained to him about an alleged lack of access to the administrative remedy system.  See id. at Exhibit E, ¶ 7.  Another non-defendant, Unit Manager J. Adami has likewise submitted a declaration under penalty of perjury stating that he served as Millbrook's unit manager from September 19, 2013 through January 2, 2014.  Although he had regular contact and several conversation with the Plaintiff during that period, Adami states that the inmate never raised a complaint about denial of access to the administrative remedy system.  See id. at Exhibit F, ¶ 7.

In the addition to the above described declarations, it is noted that in his Complaint Plaintiff acknowledges that he did not file a grievance concerning the facts relating to his pending claims.  See Doc. 1, ¶ IV.  However, as discussed above, Millbrook does raise contentions in his Complaint that he was denied access to the administrative remedy process.

Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, see Childers, 842 F.2d at 694, the nonmoving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex, 477 U.S. at 324.

Millbrook has not filed either an opposing brief nor an opposing statement of material facts.  In fact, the Plaintiff has not responded in any manner whatsoever  to the pending summary judgment motion nor has he sought an enlargement of time in which to do so.  In relevant part, Rule 56(e) states in relevant part :

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required in Rule 56(c), the court may:
> (2)     consider the fact undisputed for purposes of the motion;
> (3)      grant summary judgment if the motion and supporting materials–-including the facts considered undisputed–-show the movant is entitled to it;

When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. Celotex, 477 U.S. at 324.  If,

16

however, "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Advisory Committee Notes to F.R.C.P. 56(e)(1963 Amend.).

Local Rule 56.1 similarly provides that all material facts set forth in the statement of materials of facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Thus, a summary judgment motion may be granted if the Plaintiff fails to establish the existence of an element essential to his case. Robertson v. Allied Signal, Inc., 914 F.2d 360, 366 (3d Cir. 1990) citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A review of the undisputed record, especially Plaintiff's admissions of non-exhaustion in the Complaint (Doc. 1, ¶ IV) and the multiple declarations submitted under penalty of perjury by both defendant and non-defendant prison officials, shows that Defendants have satisfied their burden under Williams of establishing that Millbrook's allegations were not administratively exhausted and that there is is no basis for a determination that exhaustion should be excused because the administrative remedy procedure was unavailable to Millbrook.

17

The Plaintiff has not opposed the summary judgment motion and has acknowledge that his administrative remedies were not exhausted.  Millbrook's vague assertions of being denied access to the administrative remedy process which are set forth in the Complaint do not adequately demonstrated a proper basis as to why he should be excused from the exhaustion requirement.  Millbrook has equally failed to satisfy his obligation of coming forward with affirmative evidence to establish a genuine issue of material fact with respect to the issue of whether he should be excused from compliance with the exhaustion requirement.

Pursuant to the standards set forth in Rule 56(e) and Local Rule 56.1, entry of summary judgment in favor of Defendants on the basis of non-exhaustion of administrative remedies is warranted.[4]  See DiGiacomo v. Singleton, 402 Fed. Appx. 679, 681 (3d Cir. 2010)(in opposing summary judgment supported by affidavits non-moving party may not rely on allegations in his own pleading but rather by affidavits or as otherwise provided Rule 56(e) must set out specific facts showing a genuine issue for trial); Clark v. Clabaugh, 20 F.3d 1290, 1294  (3d Cir. 1994)(Rule 56(e) makes clear that a nonmoving party is required to present more than mere allegations in their pleadings when opposing a properly supported

---

[4]  In light of the Court's determination of non-exhaustion a discussion as to the merits of the remaining arguments raised by the pending summary judgment motion will not be undertaken.

18

summary judgment motion).[5]

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will

be granted, and summary judgment will be entered in favor of Defendants.

A separate Order will be issued.

Dated: March 17, 2015

/s/ **William J. Nealon**
**United States District Judge**

---

[5] This conclusion is underscored by the fact that as a seasoned <u>pro</u> <u>se</u> litigant, Millbrook was aware of his obligation to respond to a summary judgment motion.